IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 11-167 |
| | ) |
| RANDY SWINK | ) |

O P I N I O N

DIAMOND, D.J.

On July 19, 2011, a federal grand jury returned a two-count indictment against Randy Swink ("defendant") charging him at both counts with theft of social security benefits which had been paid to him as a representative payee for two minors and to which defendant knew he was not entitled.

Currently pending before the court are the following pretrial motions filed by defendant: (1) motion to produce evidence that the government intends to use under F.R.E. 404(b) and 609 (Document No. 22); (2) motion for discovery (Document No. 23); and, (3) motion to suppress statements (Document No. 24). The government filed responses to each of defendant's motions and a motions hearing was held before the court on April 25, 2012. The court first will address defendant's motion to suppress which, for the following reasons, will be denied.

1. **Motion to Suppress Statements (Doc. #24)**

Defendant has filed a motion to suppress statements he made during an interview that he had with two agents of the Social Security Administration-Office of the Inspector General ("SSA-

OIG") on July 7, 2009. Defendant asserts that the statements should be suppressed because they were made in violation of his Miranda rights and/or otherwise were involuntary.

At the suppression hearing, SSA-OIG Special Agent Patrick Donnelly, the lead investigator on defendant's case, testified as to two interviews he had with defendant, the first occurring on June 23, 2009, and the second on July 7, 2009. Donnelly's testimony, which the court finds wholly credible, briefly is summarized as follows.

Donnelly testified that on June 23, 2009, he and his partner, Leroy Grafton, arrived at defendant's place of business, presented their badges and credentials, informed defendant that he was not under arrest, and indicated that they wanted to ask him some questions which he was free not to answer. Defendant asked if he could speak to his attorney, Chris Blackwell, and the interview immediately ended. On June 29, 2009, Donnelly received a call from Blackwell and Donnelly explained to him the nature of the investigation. Blackwell told Donnelly that he would advise defendant to speak to the investigators without counsel present, and Donnelly subsequently called defendant and arranged an interview.

The second interview was scheduled for 1:00 P.M. on July 7, 2009, at the SSA office in Washington, Pennsylvania. Defendant arrived on time and the interview, conducted by Donnelly and Special Agent Tammy Shaffer in a private interview room with the doors closed, lasted approximately two hours.

Donnelly informed defendant at the outset that it was a non-custodial interview, that defendant could leave at any time and that he did not have to answer any question. Defendant indicated that he understood and that he wanted to proceed with the interview. Donnelly also mentioned to defendant at the outset that he had spoken to Blackwell and that it was his understanding that Blackwell had advised defendant to come in for the interview without counsel.

During the course of the interview, Donnelly noted varying changes in defendant's mood from crying on several occasions, to being angry or agitated to engaging in normal conversation. Donnelly was aware that defendant is receiving social security benefits for a mood disorder and anxiety and that he was taking medications for his disability.

At one point in the interview, defendant began to yell at the agents, stood up and put his hands on the table and leaned forward in what Donnelly perceived to be a threatening manner. Donnelly told defendant that if he did not calm down, he would put him in handcuffs for officer safety and for the safety of the public and other employees. Defendant immediately calmed down and the interview proceeded without further incident.

At the end of the interview, Donnelly asked defendant for a written statement, which defendant prepared in his own hand writing and signed in the presence of both Donnelly and Shaffer, and this statement was admitted into evidence as Government Exhibit 1.

On cross-examination, Donnelly acknowledged that all interviewees get nervous or stressed during an interview and that he expected defendant would be stressed and that he was aware that defendant could get very emotional. As to the incident which led defendant to becoming agitated and standing up, Donnelly testified that the questioning at that time involved a custody document which Donnelly believed may have been altered, but which further investigation revealed in fact had not been.

Before police can initiate custodial interrogation, they must advise the defendant of certain rights, including the right to remain silent and the right to counsel. Miranda v. Arizona, 384 U.S. 436, 468-470 (1966). As set forth in Miranda:

> The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.

Id. at 444.

In this case, the crux of defendant's argument is that when Donnelly threatened to place defendant in handcuffs if he did not calm down, no reasonable person in defendant's position would have felt free to leave, and, therefore, from that point in time, the interview became custodial and required that defendant be advised of his Miranda rights.

As pronounced in Miranda, custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444. Whether a suspect is in custody depends on whether, under the totality of the circumstances, a reasonable person in his position would feel free to leave. Thompson v. Keohane, 516 U.S. 99, 112 (1995). The court must apply an objective test to determine the ultimate question of whether there was "'a formal arrest or restraint of freedom of movement' of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983) (quoting Oregon v. Mathieson, 429 U.S. 492, 495 (1977)).

Where an individual, such as defendant in the case at bar, has not been formally arrested when the statements are made, "'something must be said or done by authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates they would not have heeded a request to depart or to allow the suspect to do so.'" United States v. Leese, 176 F.3d 740, 743 (3d Cir. 1999) (quoting Steigler v. Anderson, 496 F.3d 793, 799 (3d Cir. 1976).

Because custodial interrogation is not susceptible of an exact definition, the determination of whether statements are the product of such custodial interrogation must be made on a case-by-case basis. Leese, 176 F.3d at 743. Moreover, the inquiry into the circumstances surrounding the interrogation obviously is "distinctly factual." Thompson, 516 U.S. at 112.

Here, under the totality of the circumstances, the court finds that at no point in time was defendant subjected to custodial interrogation within the meaning of Miranda. The testimony of Special Agent Donnelly at the hearing established that defendant voluntarily, and upon the advice of his counsel, traveled to the SSA office in Washington, Pennsylvania, on July 7, 2009, for an interview. Defendant was advised at the outset of the meeting that he was not under arrest, that he could refuse to answer any question and that he could end the interview at any time. Defendant also confirmed that he had consulted with his attorney who had advised him to meet with the agents without his presence and defendant agreed to be interviewed without his legal counsel being present.

Nor does the court believe that the nature of the interrogation changed when Donnelly warned defendant that if he did not calm down he would be placed in handcuffs. Defendant was not actually placed in handcuffs and his freedom of movement was not restrained in any way. Although defendant was advised that if he did not calm down he would be cuffed, the fact is that defendant did calm down and therefore the threat to place him in handcuffs never materialized.

At no time did Donnelly tell defendant that he was not free to leave nor otherwise indicate in any way that he would not have heeded a request from defendant to end the interview at that point, or any other point. After defendant calmed down, the interview proceeded without further incident. The court believes

that, under these circumstances, a reasonable person would have felt free to leave at any time during the interview.

Because the court has concluded that <u>Miranda</u> warnings were not necessary, the remaining issue is whether defendant's statements otherwise were voluntary. The government has the burden of establishing that any statements given were voluntary. <u>Miller v. Fenton</u>, 796 F.2d 598, 604 (3d Cir.), <u>cert</u>. <u>denied</u>, 479 U.S. 989 (1986).

A statement is involuntary when the suspect's "will was overborne in such a way as to render his confession the product of coercion." <u>Arizona v. Fulimante</u>, 499 U.S. 279, 288 (1991). Whether a statement is voluntarily made is determined from "the totality of all the surrounding circumstances - both the characteristics of the accused and the details of the interrogation." <u>Dickerson v. United States</u>, 530 U.S. 428, 434 (2000) (<u>quoting</u> <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226 (1973)).

Relevant factors to consider in evaluating voluntariness include not only the crucial element of police coercion, but also may include the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition and mental health. <u>See</u> <u>Colorado v. Connelly</u>, 479 U.S. 157, 167 (1986); <u>Withrow v. Williams</u>, 507 U.S. 680, 693 (1992). The overriding question in evaluating voluntariness is whether the law enforcement officer's tactics and statements "were so manipulative or coercive that they deprived [the defendant] of his

AO 72
(Rev. 8/82)

- 7 -

ability to make an unconstrained, autonomous decision to confess." Miller, 796 F.2d at 605.

Here, the court finds that defendant's statements were voluntary. As already noted, defendant voluntarily traveled to the SSA office upon the advice of his counsel for the interview. Although defendant's mood varied throughout the course of the interview, it is clear from Donnelly's testimony that there was no manipulation or coercion in his interview tactics. Rather, although defendant at times cried or became agitated, the agents were aware of defendant's volatile moods and, except for the one occasion where defendant rose in a manner the agents perceived to be threatening, permitted defendant to express his emotions and at all times conducted the interview in a professional manner. Finally, at the conclusion of the interview, defendant signed a written statement which he prepared in his own handwriting, further indicating that he was acting of his own free will and not merely at the behest of the agents.

Moreover, the court does not believe that defendant's statements were rendered involuntary by Donnelly's warning to defendant that he would be placed in handcuffs if he did not calm down. Again, this single incident in the course of a two-hour interview quickly was defused, defendant did calm down and was not placed in handcuffs, and the interview proceeded from there without further incident.

Based on the totality of the circumstances, the court is satisfied that any statements made by defendant at the interview

on July 7, 2009, were voluntary in all respects and were not the product of any type of coercion.

2. **Motion for Notice of 404(b) Evidence (Doc. #22)**

Defendant has filed a motion requesting that the government be required to produce evidence that it intends to use under Rules 404(b) and 609 of the Federal Rules of Evidence.

Fed.R.Evid. 404(b) permits the admission of evidence of other crimes, wrongs or acts for certain enumerated purposes, provided that, upon request by the accused, the government shall provide reasonable notice in advance of trial of the general nature of any such evidence it intends to introduce at trial. Evidence is admissible under Rule 404(b) if: (1) it has a proper purpose under Rule 404(b); (2) it is relevant under Rules 401 and 402; (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice under Rule 403; and (4) the court charges the jury to consider it only for the limited purpose for which it is admitted. United States v. Vega, 285 F.3d 256, 261 (3d Cir. 2002).

Rule 609(a) allows, for the purpose of attacking the credibility of an accused, the admission of evidence that the accused has been convicted of any crime punishable by death or imprisonment of one year if the court determines that the probative value of admitting that evidence outweighs the prejudicial effect to the accused. The rule further provides that evidence that any witness has been convicted of a crime involving

dishonesty or false statement shall be admitted regardless of punishment. The only advance notice requirement under Rule 609 is that the government must provide "sufficient advance written notice" of its intent to use evidence of a conviction more than ten years old. Fed.R.Evid. 609(b).

In response, the government has submitted a notice indicating that, pursuant to F.R.E. 404(b), it intends to offer evidence relating to defendant's failure to comply with child support obligations between 2005 and 2009, the time frame of the conduct charged in the indictment. The government avers that this evidence is relevant to prove "intent" and "absence of mistake" as authorized under Rule 404(b). The government also has indicated that it is unaware of any criminal convictions which could be used to impeach defendant under Rule 609(a).

The notice the government has provided is sufficient to satisfy its obligations under Rule 404(b). Nevertheless, the court will enter an order granting defendant's motion and further requiring the government, no later than ten days prior to trial, to provide notice of any additional evidence that may fall under Rule 404(b) that it subsequently decides it may intend to use at trial, as well as any criminal convictions of which it subsequently may become aware falling within the parameters of Rule 609(a).

To the extent defendant seeks to have the proposed Rule 404(b) evidence excluded from trial, such a request is premature, and the motion will be denied without prejudice in that regard.

AO 72 (Rev. 8/82)

### 3. **Motion for Discovery (Doc. #23)**

Defendant also has filed a motion for discovery pursuant to Fed. R. Crim P. 16 and 26.2, <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>United States v Giglio</u>, 405 U.S. 150 (1972), requesting that the government disclose forthwith any favorable exculpatory or impeachment evidence, including any payments to witnesses and/or promises of immunity, leniency or other preferential treatment, as well as any information relating to the criminal background of any potential prosecution witness.

Generally, governmental disclosure of evidence in criminal cases is governed by Fed.R.Crim.P. 16(a)(1). The United States Court of Appeals for the Third Circuit has recognized that discovery in criminal cases is limited to those areas delineated in Rule 16(a)(1), "with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution." <u>United States v. Ramos</u>, 27 F.3d 65, 68 (3d Cir. 1994). As a general matter, these other areas are limited to the Jencks Act (18 U.S.C. §3500 and Fed. R. Crim. P. 26.2) and materials available pursuant to the "<u>Brady</u> doctrine." <u>Id</u>.

In response, the government has acknowledged its responsibilities under Rules 16(a) and 26.2 and the <u>Brady</u> doctrine and has indicated that it will comply, or already has complied, with those obligations. In addition, the government also represents that it currently is unaware of any exculpatory evidence and that it does not intend to provide any type of

payment, leniency, immunity or other favorable treatment to any government witness. Finally, the government notes that none of its anticipated witnesses has a criminal record and that it currently is unaware of any other type of impeachment materials relating to any of its anticipated witnesses.

As the government is cognizant of its discovery obligations, and has stated its intent to fulfill those obligations if it already has not done so, defendant's discovery motion will be granted in part and denied in part, and the following order will be entered:

1) The government shall disclose all <u>Brady</u> exculpatory material forthwith;

2) The government shall disclose all <u>Brady</u> impeachment material and Rule 16(a) material no later than ten days prior to trial;

3) The government disclose all Jencks material in accordance with 18 U.S.C. §3500(b), but with encouragement to disclose such material no later than ten days prior to trial.

4) To the extent defendant requests information not discoverable under Rule 16, <u>Brady</u> or the Jencks Act, the motion will be denied.

An appropriate order will follow.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

Date: June 12, 2012

cc: Shaun E. Sweeney
    Assistant U.S. Attorney

    Linda E.J. Cohn
    Assistant Federal Public Defender